IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
02 AUG 16 PM 2:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| PEAT, INC., an Alabama corporation, | } | |
| Plaintiff, | } | |
| v. | } | CV-99-BE-2553-NE |
| VANGUARD RESEARCH, INC., a Virginia corporation, | } | |
| Defendant. | } | |

**ENTERED**
AUG 16 2002

## MEMORANDUM OPINION

This case is before the court on the plaintiff's "Motion for Order Declaring Defendant's Claims in Arbitration Barred by Res Judiciata [sic] and/or Collateral Estoppel, and Motion to Enjoin Or Stay the Arbitration Proceeding" (document 217). In support of its motion, PEAT has submitted to the court numerous exhibits, including the Demand for Arbitration by Vanguard Research Inc., (Exhibit A); the Witness List and Witness Testimony Summary offered by Vanguard in the arbitration matter (Exhibit E); and the Prehearing Brief of Claimant/Counter Respondent, Vanguard Research, Inc. submitted in the arbitration proceeding (Exhibit G). Vanguard filed its opposition to PEAT's motion. The court held argument on the matter on August 14, 2002. In deciding this motion, the court also has reviewed the pleadings in this case, the parties' requested jury instructions, and this court's instructions to the jury as well as the verdicts returned by the jury. Based on review of this matter, the court concludes that PEAT's motion is due to be **GRANTED IN PART** and **DENIED IN PART** for the reasons stated

below. Arbitration of Vanguard's fraud claim and of any claim to a license to use PEAT's PEPS technology beyond Phase I is hereby ENJOINED. The request to enjoin arbitration of Vanguard's breach of contract claim as to the Phase I Subcontract and of Vanguard's claim of a license to use PEAT's PEPS technology in Phase I is hereby DENIED. However, to protect the judgment of this court entered on July 31, 2002, the arbitration proceeding scheduled to begin August 19, 2002 is hereby STAYED pending resolution of post-trial matters and any possible appeal.

I.   Procedural Posture

This case has had a torturous past, which is only briefly outlined here. PEAT and its predecessor had been involved in developing technology to use plasma energy to destroy or reconstruct various types of hazardous waste. This technology was referred to as "PEPS," an acronym for Plasma Energy Pyrolysis System, a trademark of Vanguard based on PEAT's technology. Testimony at trial verified that the development of such technology is costly and not without financial risks, but can hold great promise. PEAT and Vanguard worked together to obtain government contracts to provide this technology to the U. S. Army. In 1997, they entered into a Marketing & License Agreement and a subcontract for providing a system to the Army through the TVA. This subcontract has been referred to as "Phase I." The parties also proposed to the government a mobile, truck-mounted PEPS unit referred to as "Phase II." Although the government awarded a contract to Vanguard for Phase II and PEAT participated preliminarily in its development, the parties were unable to agree to a subcontract. Eventually, Vanguard terminated PEAT's involvement on Phase I and completed Phase II without PEAT's further involvement.

On August 17, 1999, Vanguard filed an arbitration demand with the American Arbitration Association raising three claims, which will be discussed subsequently. Vanguard also filed a declaratory judgment action in the Eastern District of Virginia on September 21, 1999, seeking a declaration that its claims in the arbitration demand were arbitrable under the Federal Arbitration Act. That case was transferred to the District Court for the District of Columbia. On July 27, 2001, the United States District Court for the District of Columbia ruled that the three claims asserted in the demand for arbitration were in fact arbitrable and ordered the case to proceed to arbitration.

In the meantime, PEAT filed the present action in this court on September 23, 1999. On March 5, 2000, Judge Smith[1] dismissed any "Phase I claims" under the "first-to-file" rule. (Documents 33, 34). PEAT filed an Amended Complaint and a Second Amended Complaint that purported to eliminate any Phase I claims. In defense of PEAT's claim, Vanguard asserted, among other things, fraud in the inducement, misrepresentation, and also sought rescission of the Marketing & License Agreement based upon fraud. This case proceeded to trial in Decatur, Alabama, beginning July 15, 2002, and ending with a jury verdict on July 30, 2002. The jury found in favor of PEAT on its breach of contract and misappropriation of trade secret claims and assessed damages against Vanguard for $325,968.01 and $1,819,334.00 respectively. The jury also awarded $8,890,000.00 punitive damages for willful and malicious misappropriation of

---

[1] Judge Smith transferred this case to the undersigned judge as part of the "gift basket of cases" she received upon taking the bench.

3

trade secrets.² This court entered judgment on the jury verdict on July 31, 2002.

II.     Power to Issue an Injunction

PEAT seeks to have this court determine that res judicata and/or collateral estoppel bar the litigation of certain issues in the arbitration proceeding and seeks to have this court enjoin or stay arbitration. The first issue this court must decide is whether it has the power to enjoin arbitration at all. The Eleventh Circuit Court of Appeals addressed this precise issue in the case of Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 985 F.2d 1067 (11th Cir. 1993). In that case, the Eleventh Circuit concluded that the district court did in fact have authority in its discretion to enjoin arbitration when the claims in arbitration alleged essentially the same conduct as involved in the earlier federal court litigation. 985 F.2d at 1069-1070.

The plaintiffs in Kelly argued precisely the same point urged by Vanguard: that the question of res judicata must be decided in arbitration as an affirmative defense. The Eleventh Circuit rejected that argument and determined that "the better rule is that courts can decide res judicata.... Courts should not have to stand by while parties re-assert claims that have already been resolved...." 985 F.2d at 1069 (citations omitted). The court specifically concluded that "the District Court was in the best position to decide whether the arbitration proceedings jeopardized its prior judgment." 985 F.2d at 1070. In so doing, the court relied upon the All Writs Act. "The All Writs Act, 28 U.S.C. § 1651, gives federal courts broad injunctive powers

---

²Vanguard has challenged, among other things, the amount of punitive damages in its Motion to Alter or Amend Judgment. The court has orally indicated to counsel its intention to reduce the amount of punitive damages to the amount of the actual damages ($1,819,334.00) as required by Ala. Code § 8-27-4 (1993). Whether the amount of punitive damages is reduced further will depend on whether Vanguard meets its burden of proof by establishing that it is a "small business" as defined by Ala. Code § 6-11-21 (Michie Supp. 2001).

to protect their own judgment."³ 985 F.2d at 1069.

Applying the "better rule," and being in the "best position" to determine the effects of the claims in arbitration on its prior judgment, this court has the authority to enjoin arbitration if the claims asserted there are barred by res judicata or collateral estoppel or to protect its judgment. Whether to exercise that authority rests in the sound discretion of the trial court. Wesch v. Folsom, 6 F.3d 1465, 1469 (11th Cir. 1993); Kelly, 985 F.2d at 1070.

III.   Res Judicata and/or Collateral Estoppel

PEAT asserts that the allegations made by Vanguard in the arbitration proceedings are barred by either the doctrine of res judicata or collateral estoppel. Lawyers and courts have often lumped together claim and issue preclusion under the term res judicata. See Gjellum v. The City of Birmingham, 829 F.2d 1056, 1059 n.3 (11th Cir. 1987). Claim and issue preclusion, however, involve two separate types of preclusion. Claim preclusion, also referred to as res judicata, bars relitigating the same causes of action that were or could have been raised in an earlier action. See In re Justice Oaks II Ltd., 898 F.2d 1544, 1549-50 n.3 (11th Cir. 1990). Collateral estoppel, on the other hand, is true issue preclusion. "Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." Gjellum, 825 F.2d at 1059 n.3; see also Restatement (Second) of Judgments § 27 (1982).

When a party seeks to invoke res judicata, it must show that the prior decision "(1) was rendered by a court of competent jurisdiction; (2) was final; (3) involved the same parties or their privies; and (4) involved the same causes of action." Trustmark Ins. Co. v. ESLU, Inc., Nos. 91-

---

³That Act provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

5

5927, 91-6085, 2002 U.S. App. Lexis 15500, *11-12 (11th Cir. August 2, 2002); In re Piper Aircraft Corp., 244 F.3d 1289, 1296 (11th Cir. 2001). If claims "arise out of the same transaction or series of transactions," they are part of the same "cause of action." Piper, 244 F.3d at 1297. The court must make a fact-based inquiry to determine whether the claims are based on the same factual predicate or arise from the same nucleus of operative fact. If so, res judicata applies. Trustmark Ins. Co., 2002 U.S. App. Lexis 15500 at *13. Res judicata bars all legal theories and claims arising out of the same nucleus of operative fact because those claims could have been brought in the original action. Claim preclusion, thus, forecloses litigation of a matter that may never have been actually litigated because of a determination that it should have been advanced in the earlier suit. Gjellum, 829 F.2d at 1059 n.3. If the subsequent litigation arises from a different cause of action, i.e., not from the same nucleus of operative fact, then the first judgment bars subsequent litigation of only "those matters or issues common to both actions which were either expressly or by necessary implication adjudicated in the first." In re Justice Oaks II, 898 F.2d at 1549-50 n.3. This second form of preclusion is referred to as "issue preclusion," or collateral estoppel.

     One asserting collateral estoppel must show that "(1) the issue at stake is identical to one involved in a prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must have been 'a critical and necessary part' of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding." Christo v. Padgett, 223 F.3d 1324, 1339 (11th Cir. 2000); Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1359 (11th Cir. 1998). An issue has actually been litigated "'when an issue is properly

6

raised, by the pleadings or otherwise, and is submitted for determination, and is determined.'"
Pleming 142 F.3d at 1359 (quoting Restatement (Second) of Judgments § 27 cmt. d (1982)).

IV.   Arbitration Claims vs. Litigated Issues

To determine whether the judgment entered by this court on July 31, 2002, precludes the litigation of any issues involved in the arbitration, the court must compare those matters presented in this case with the claims asserted in the arbitration matter. Such a comparison reveals that some, but not all, of the matters asserted by Vanguard in arbitration have already been determined by the jury verdict in this case and, therefore, should be barred from relitigation.

A.    Claims in Arbitration.

A review of Vanguard's Demand for Arbitration reflects that it asserts three claims for arbitration: (1) declaratory relief seeking a declaration that Vanguard has a right to use PEAT's technology and that it is not obligated to pay royalties to PEAT; (2) breach of the Subcontract for Phase I; and (3) fraud. Vanguard specifically claims that PEAT breached its obligations under the subcontract in four ways: (a) not performing work in a manner that insures the safe operation of the system; (b) not providing value for work performed; (c) making claims in the lawsuit that are the subject of the Subcontract's arbitration agreement; and (d) not dealing fairly and in good faith with Vanguard.

As to its allegations of fraud, Vanguard asserts that PEAT made various representations to Vanguard from about 1992 to about January 1999 concerning PEAT's capabilities and the capabilities of PEAT's technology. Vanguard specifically outlines those alleged representations as (1) PEAT had developed a system for treatment of medical waste in a safe manner; (2) PEAT had the ability to attract first class science and engineering personnel; (3) PEAT possessed a

7

proprietary system control and data acquisition package that only required minor tailoring; and (4) PEAT possessed certain manufacturing and complete system installation capability. Vanguard claims that those representations were false and that those representations induced Vanguard to enter into "its various contracts with PEAT, including without limitation, the Subcontract...."

In its Prehearing Brief submitted to the arbitration panel, Vanguard details the factual basis for its misrepresentation claims. Those alleged misrepresentations include a representation that PEAT had developed to within ninety percent of completion a control system suitable for the scaled up PEPS system; that it had already done a high degree of drawing for a commercial system; that it had a valid patent; and that it had capabilities to perform its obligation under the subcontract.

  B. Claims Actually Presented at Trial

In its answer to the complaint, Vanguard asserted as a defense to PEAT's claims of breach of contract as to the Marketing & License Agreement that PEAT had made certain misrepresentations to Vanguard. Also as a counterclaim, Vanguard sought rescission of the Marketing & License Agreement based on alleged fraud or mutual mistake. In the Pretrial Order entered by this court on May 31, 2002, Vanguard made the following statements about its misrepresentation claims: "Vanguard contends that PEAT's technology, patent, and capabilities were materially different than what PEAT represented prior to entry into the 1997 Marketing & License Agreement. In particular, PEAT misrepresented, among other things, that its TDR technology design was 'commercial', a 'commercial-item', 'commercialized' and met 'commercial standards', when it did not; that its control system software was essentially

8

complete and suitable for a commercial-size unit and could be ported over with only minor tailoring and without creating more executable software code, when this was false; that it had staff, facility, and capability to design and build a commercial PEPS, when it did not; that it had designs for prior commercial units that were about ninety percent done and could be used for Phase I PEPS, when such was not the case, and that its patent was 'good' and 'good to go', when it was not."

At trial, Vanguard presented testimony from numerous people concerning these alleged misrepresentations. However, the court precluded any evidence concerning the validity of PEAT's patent based on its prior summary judgment ruling.[4]

In defense of the misappropriation of trade secret claims asserted by PEAT, Vanguard argued that it had a license to use the PEPS technology and, therefore, could not be liable for misappropriation of any trade secrets. At trial, Vanguard offered evidence that the August 14, 1997, letter (Defendant's Trial Exh. 23) was a license that gave it permission to use PEAT's PEPS technology. Among other things, the court instructed the jury as to the misappropriation of trade secret claim that one element PEAT had to prove was that Vanguard used or disclosed the trade secrets without PEAT's permission.

The jury returned a verdict in PEAT's favor on the misappropriation of trade secrets claim. In so doing, the jury had to determine that Vanguard did not have a right to use or disclose PEAT's technology and that the August 14, 1997 letter on which Vanguard relied did

---

[4] See Order entered July 11, 2002 (document 196).

not grant it a license beyond Phase I.[5]

In its instruction to the jury, the court charged the jury as requested by Vanguard with some modifications concerning the various defenses of fraud, and also concerning the counterclaim for rescission based on fraud. Specifically, the court instructed the jury that Vanguard raised as a defense to PEAT's claims of breach of contract, the defense of fraud in its various manifestations. The court charged the jury that Vanguard alleged that PEAT misrepresented the following facts:

    (1)    That PEAT had the capability to design and build a commercial plasma energy pyrolysis system;

    (2)    That PEAT had a control system 90% completed for a different commercial system that could be transferred to the PEPS commercial system with only minor tailoring;

    (3)    That PEAT had the capacity to design and manufacture a commercially safe system; and

    (4)    That PEAT had a design for a commercial system 90% completed.

The court specifically instructed the jury regarding the elements of Vanguard's defense based upon willful misrepresentation, reckless misrepresentation, and deceit. In each of those instructions, the court advised the jury that if Vanguard established the elements of those varieties of fraud, "then PEAT cannot recover on its claims of breach of the Agreement."

In explaining to the jury Vanguard's counterclaim for rescission, the court again instructed the jury concerning the requirements for willful misrepresentation, reckless

---

[5] See discussion *infra* regarding the court's instruction that the jury could not consider any claim arising out of Phase I.

10

misrepresentation, and deceit.

The jury returned a verdict in favor of PEAT on its claim of breach of the Marketing & License Agreement and against Vanguard on its counterclaim for rescission. Although Vanguard correctly argues that the basis of the jury's rejection of the rescission counterclaim could have been based on failure of proof other than as to PEAT's misrepresentations, Vanguard ignores the fact that the jury also found against it on the <u>defense</u> of fraud. Thus, the jury necessarily resolved Vanguard's claims of the various types of fraud against it.

Although the trial of the case included presentation of evidence concerning the Phase I Subcontract and the relationship of the parties involving it, the court, at the urging of Vanguard, specifically instructed the jury that any claims arising out the Phase I Subcontract were not a part of the case. The court charged the jury that "[y]ou are instructed that you are in no way to consider in this case any claim that arises out of the Phase I Subcontract and you may not base your verdict in any way on any claim or defense that arises out of any matter of the Phase I Subcontract." Therefore, the court did not submit to the jury any question concerning, among other things, any alleged breach by either party of the Phase I Subcontract.

V.     Comparison of Arbitration Claims and Litigated Claims

Vanguard's Opposition To PEAT's Motion dances around and side steps the central question before the court: whether Vanguard's claims for fraud and misrepresentation and breach of contract it asserts in its Demand for Arbitration are barred by the jury verdict rendered in this case. Vanguard emphasizes that Judge Smith dismissed all of PEAT's Phase I claims and that "PEAT affirmatively pled that it was not asserting any Phase I claims." Vanguard's Opposition at 11. However, PEAT does not seek a determination that the jury decision on PEAT's claims

11

operate to bar the arbitration of its claims against Vanguard. Instead, PEAT seeks claim and/or issue preclusion of <u>Vanguard's claims</u> in arbitration. Judge Smith's ruling that dismissed PEAT's Phase I claims did not address Vanguard's defenses and counterclaims based on alleged misrepresentations.

Based on the earlier rulings by Judge Smith dismissing Phase I claims and by the District of Columbia District Court ordering that issues involving the Phase I Subcontract be arbitrated, this court carefully and diligently and repeatedly sought to keep issues relating to Phase I out of the trial of this case. And as the court repeatedly told counsel, doing so was like separating Siamese twins. Because all of the claims asserted in arbitration and in this case "arise out of the same transaction or <u>series of transactions</u>," <u>Piper</u>, 244 F.3d at 1297, <u>res judicata</u> normally would bar the subsequent litigation of the breach of the Phase I Subcontract. But for the prior ruling submitting the Phase I issues to arbitration based on the arbitration clause in the Subcontract, the cause of action for its breach could have been litigated before this court. However, the question of whether either party breached the Phase I Subcontract was not submitted to the jury because of the prior rulings on its arbitrability. This issue plainly was separated out for arbitration and no decision by this court affects the continued validity of either party's claims regarding breach of the Subcontract.

The <u>Kelly</u> decision holds that a federal court can enjoin completely an arbitration proceeding when those issues asserted in the arbitration proceeding are the same ones asserted or which could be asserted in the federal court litigation. <u>See</u>, 985 F.2d at 1070. In this case, however, the claim of breach of the Phase I Subcontract could not be presented in this litigation because of the prior order submitting that issue to arbitration. Therefore, this court should not

12

enjoin the proceedings in arbitration relating to the breach of the Subcontract of Phase I.

In contrast, the question of whether Vanguard had a right to use PEAT's PEPS technology beyond the Phase I subcontract was specifically litigated and determined by the jury. Vanguard presented evidence and argued to the jury that the August 14, 1997, letter (Defendant's Trial Exh. 23) gave it a license to use PEAT's technology beyond Phase I. The jury rejected this argument when it found that Vanguard had misappropriated PEAT's trade secrets. If the jury had concluded that Vanguard had a right to use PEAT's technology beyond Phase I, then Vanguard could not have been liable for misappropriation. The question of Vanguard's right to use PEAT's technology was, thus, a critical and necessary part of the case submitted to and decided by the jury. Collateral estoppel and <u>res judicata</u> both bar the relitigation of whether Vanguard had the right to use PEAT's technology beyond Phase I. The issue of whether Vanguard had the right to use PEAT's technology in the completion of the Phase I project, however, was <u>not</u> submitted to the jury and Vanguard is, therefore, not barred from presenting that issue in arbitration.

As previously outlined in its demand for arbitration, Vanguard asserts a claim for fraud that allegedly induced it to enter "various contracts with PEAT, including without limitation, the Subcontract ... ." A comparison of Vanguard's Prehearing Brief submitted in arbitration and the instructions given by the court to the jury demonstrates that the arbitration allegations outline the exact same misrepresentations that Vanguard argued to the jury in its defense of PEAT's claims and to support its counterclaim for rescission. Further, the witnesses who testified at trial about the alleged misrepresentations are the same people listed on Vanguard's witness list to testify at the arbitration proceeding about these same alleged misrepresentations. In concluding that

13

Vanguard was liable for breaching the Marketing & License Agreement, the jury rejected Vanguard's defense of fraud. In rejecting Vanguard's counterclaim for rescission based on fraud in the inducement, the jury likewise rejected Vanguard's claim. The issue of alleged misrepresentation was, therefore, fully litigated and decided adversely to Vanguard in this case. Therefore, collateral estoppel bars Vanguard from relitigating the claims of fraud in the arbitration proceeding. Alternatively, because the allegations of misrepresentation asserted in the arbitration proceeding arise from the same operative facts as the defenses asserted in trial, <u>res judicata</u> bars the claims of fraud contained in Count 3 of the arbitration demand.

Vanguard, in opposition to PEAT's motion, claims that submitting any Phase I claim to the jury constituted error by this court. The decision of the District of Columbia District Court compelled arbitration of issues involving the Phase I Subcontract. Vanguard, thus, asserts that "[g]iven that the claims in Vanguard's arbitration demand had to be arbitrated, ... it would have been improper to allow them to be resolved in this case." Vanguard's Opposition at page 8. However, if this court committed any error regarding the submission to the jury of Vanguard's defense and counterclaim based on alleged misrepresentations, Vanguard led the court into such error and cannot be heard to complain. Vanguard asserted alleged misrepresentations in its answer, counterclaim, and statement of position in the Pretrial Order. Vanguard voluntarily presented evidence and repeatedly requested jury instructions regarding fraud and misrepresentation as a defense to liability for breach of the contract and also in support of its counterclaim for fraud in the inducement justifying rescission. If the court committed error in allowing Vanguard's various theories of fraud to go to the jury, Vanguard cannot now complain because such error, if any, was Vanguard's own doing. The well-established doctrine of invited

14

error holds that "a party may not avail himself of error into which he has led the court." <u>Ellerbee v. Atlantic Coastline R. Co.</u>, 258 Ala. 76, 61 So. 2d 89, 92 (1952).

Having determined that <u>res judicata</u> and/or collateral estoppel bar Vanguard from relitigating the issues surrounding alleged misrepresentations by PEAT, and the issue of whether Vanguard had a license to use PEAT's technology beyond the Phase I Subcontract, the court must determine what action, if any, it should take. To protect the validity of the jury verdict in this case, the court finds it is necessary to enjoin the arbitration of these two issues. The court's authority to do so is based on the reasoning in <u>Kelly v. Merrill Lynch</u>, 985 F.2d 1067 (11th Cir. 1993) previously discussed.

PEAT, however, urges the court to go further and enter a stay of the arbitration proceedings scheduled to begin in a few days. PEAT cites Vanguard's assertion of its fragile financial condition and raises concern over diminishing that financial capability to satisfy the jury verdict as a reason to justify the court's entering such a stay. PEAT did not cite nor has the court been able to find any authority precisely on point. However, the court is most concerned about the adverse effect that continued litigation of related issues may have upon the ability of Vanguard to satisfy the judgment rendered against it in this court.

Although this court has broad powers granted to it by the All Writs Act, the Anti-Injunction Act, 28 U.S.C. § 2283, "prohibits federal courts from enjoining state court proceedings with three limited exceptions. The two exceptions relevant to this case allow a federal court to enjoin a state court proceeding: (1) when necessary in aid of its jurisdiction, and (2) to protect or effectuate its judgments." <u>Wesch v. Folsom</u>, 6 F.3d 1465, 1470 (11th Cir. 1993). Although the arbitration is not a state court proceeding, it is an alternative forum and this court

15

should exercise caution in staying any other proceeding.

This court must determine whether ordering a stay of the arbitration is necessary "to protect or effectuate its judgments." Because of the concern that continued expensive litigation of the nature engaged in by Vanguard in the trial of this case will dissipate the res from which satisfaction of the judgment would come, the court finds this case somewhat analogous to the case of Battle v. Liberty National Life Insurance Co., 877 F.2d 877 (11th Cir. 1989). That case involved a lengthy federal court class action that resulted in a consent judgment that was at risk because of a subsequently filed state court proceeding asserting substantially similar claims. The federal court enjoined the state court plaintiffs from pursuing related claims in state court. In affirming that injunction, the Eleventh Circuit noted: "it makes sense to consider this case, involving years of litigation and mountains of paper work as similar to a res to be administered. As the district court stated, '[a]ny state court judgment would destroy the settlement worked out over seven years, nullify this court's work in refining its Final Judgment over the last ten years, add substantial confusion in the minds of a large segment of the state's population, and subject the parties to added expense and conflicting orders.'... This lengthy, complicated litigation is the 'virtual equivalent of a res.'..." 877 F.2d at 882.

Although not as extensive as the Battle case, this case that has been preceding since 1999, has involved thousands of hours of time, thousands of pages of submissions, and numerous rulings by this court. The trial of this case took ten days and the jury deliberated for two and one-half days before reaching its verdict. The court notes that the defendant Vanguard incurred hundreds of thousands of dollars in expense in presenting expert witnesses in this case, as well as the attorney fees generated by at least three lawyers working on this case. As evidence at trial

16

indicated, and as believed by the jury, the actions by defendant Vanguard substantially adversely affected PEAT's ability to continue in business. That entity now has no assets and is a mere shell corporation. To require PEAT to incur the additional expense of further litigating substantially similar issues in arbitration would work an injustice to it at this time.

This court has the authority, in its discretion, to enjoin arbitration. See Kelly, 985 F.2d at 1068-1069. A stay of the arbitration pending a final determination of issues remaining in this matter – Defendant's post trial motion, Plaintiff's motion for attorney's fees, any appeal of the verdict – is less dramatic than enjoining the proceeding. That a federal district court may stay another proceeding when doing so will protect its judgment follows from the authority given by the All Writs Act. See Wesch, 6 F.3d at 1469-1470. The court, therefore, concludes that the best method of protecting its judgment in light of the peculiar facts of this case is to stay the arbitration on the one remaining viable claim, the breach of the Subcontract.

A separate order will be entered enjoining the relitigation in arbitration of the issues of PEAT's alleged misrepresentations and of Vanguard's claimed license to use PEAT's technology beyond Phase I, and staying the arbitration of the breach of contract claims until resolution of post-trial motions and any possible appeal.

DONE and ORDERED this 16th day of August, 2002.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE